PORTELA *v.* THE PORTO RICAN–AMERICAN TOBACCO Co.

APPEAL from the District Court of San Juan.

No. 58.—Decided June 18, 1903.

CONTRACTS FOR SERVICES—COMPENSATION.—In a contract for services it is necessary that such services be rendered in order that a right to receive compensation therefor may exist; and in case of the dismissal of the servant before the expiration of such contract he has a right to indemnification only when he is dismissed without just cause.

ID.—BREACH OF CONTRACT.—Breach of contract by one of the parties thereto relieves the other from all responsibility for the obligations contained therein, the latter not being required to ask for a rescission or nullity thereof, nor would such an action lie if based upon this ground.

STATEMENT OF THE CASE.

In the action instituted in the District Court of San Juan by José Portela Silva, a manufacturer, residing in this city,

las obligaciones en él contraidas, sin que tenga necesidad de pedir la rescisión ó nulidad del mismo, que tampoco procedería por este fundamento.

## EXPOSICIÓN DEL CASO.

En el juicio seguido ante el Tribunal de Distrito de San Juan por Don José Portela Silva, industrial y de esta vecindad con la Sociedad "Porto Rican American Tobacco Company", domiciliada en esta Ciudad, sobre cobro de cantidad, cuyo juicio pende ante Nos en virtud de recurso de casación, hoy de apelación, interpuesto por la parte demandante contra la sentencia dictada por dicho Tribunal, habiendo representado y dirigido ante esta Corte Suprema á Portela Silva el Letrado Don Jacinto Texidor, y á la Porto Rican American Tobacco Company el Letrado Don Hilario Cuevillas Hernández.

*Resultando:* que la sentencia apelada literalmente dice así:

"En la Ciudad de San Juan de Puerto Rico, á 28 de Agosto de 1902.— Vistos estos autos de juicio declarativo seguidos entre partes, de una Don José Portela Silva, mayor de edad, industrial, y de esta vecindad, representado por el Letrado Don Herminio Diaz Navarro, como demandante, y de otra la Sociedad "Porto Rican American Tobacco Company" establecida en esta Ciudad y representada por el Letrado Don Hilario Cuevillas Hernández, como demandada, en cobro de cantidad.

*Resultando:* que Don José Portela Silva acompaña á su demanda, primero, una copia simple de la declaratoria y reconocimiento que ante el Notario de esta Ciudad, Don Santiago R. Palmer, hicieron dicho Portela, Don Fausto Rucabado y Don O. P. Villere en 17 de Noviembre de 1899, que en lo atinente á la cuestión planteada es: que en 9 de Octubre del referido año la mercantil Rucabado y Portela, los mencionados Portela y Rucabado, socios gestores, y "Porto Rican American Tobacco Company", organizada y existente segun las leyes del Estado de New Jersey, Estados Unidos de América, vendían, traspasaban y entregaban aquéllos á la última, por precio que en el documento consta, todos los derechos, títulos é intereses del vendedor y de socios, en su asunto mercantil é industrial, en lo perteneciente á la fabricación de tabacos y cigarrillos, aclarando que la venta ó traspaso es desde el 16 de Agosto de 1899 y el vendedor y los socios por medio de agentes, personalmente y en cualquier época dentro de los tres años de la fecha de esa escritura, comunicarán todas las fórmulas, procedimiensos secretos de la manufactura, etc., y en consideración á ello, y del empleo de los socios Rucaba-

against the "Porto Rican-American Tobacco Company", domiciled in the same city, for the recovery of a sum of money, said action pending before us on appeal in cassation, now appeal, taken by the plaintiff from the judgment rendered by said court; Portela Silva being represented in this Supreme Court by his counsel, Jacinto Texidor, and the "Porto Rican-American Tobacco Company" by Hilario Cuevillas Hernández.

The judgment appealed from literally reads as follows:

"In the city of San Juan, Porto Rico, August 28, 1902. In view of these proceedings had in a declaratory action instituted by José Portela Silva, plaintiff, of legal age, a manufacturer, residing in this city, represented by Herminio Díaz Navarro, Esq., and the "Porto Rican-American Tobacco Company", defendant, doing business in this city, and represented by Hilario Cuevillas Hernández, Esq., for the recovery of a debt.

José Portela Silva files with his complaint: First.—A simple copy of the declaration and acknowledgment made before Santiago R. Palmer, Notary of this city, by said Portela, Fausto Rucabado and O. P. Villere, on November 17, 1899, which, with reference to the question in issue, is to the following effect: That on November 9 of aforesaid year, the firm of Rucabado & Portela, the above mentioned Portela and Rucabado being managing partners thereof, transferred to the "Porto Rican-American Tobacco Company", a corporation, organized and existing under the laws of the state of New Jersey, United States of America, for the consideration mentioned in the deed, all their rights, titles and interests, as vendor and partners, in their mercantile and industrial business, so far as the same had reference to the manufacture of cigars and cigarettes, explaining that the sale or transfer was to take effect from August 16, 1899, and that the vendor and partners, either through agents or personally, at any time within three years from the date of said deed, engaged to communicate all the formulas, processes, secrets of the manufacture, etc., in consideration of which and of the employment of the partners Rucabado and Portela, in general and each by himself, it was agreed that they should be retained in the service of the vendee for one year, from August 16, 1899, and devote three-fourths of their time, and all their ability and experience to matters connected with the preparation, manufacture and sale of the vendee's products, at an annual salary of four thousand dollars, each, payable monthly, they to remain in said service for one year, beginning from August 16, 1899; that if required by the vendee to reside in Santo Domingo for the benefit of the business, the annual salary would be five thousand dollars instead of four thousand, said vendee to pay

do y Portela, en general, y cada uno de por sí, convienen en estar al servicio del comprador por un año contado desde el 16 de Agosto de 1899, y dedicar tres cuartas partes de su tiempo, toda su habilidad y conocimientos, á los asuntos de preparación, manufactura y venta de los productos del comprador por cuatro mil dollars al año. cada uno, que se pagarán por mensualidades, y permanecerán en ese servicio un año, que principió el 16 de Agosto de 1899; que si exigiese el comprador resida en Santo Domingo, por el interés del negocio, el salario será de cinco mil dollars al año, en vez de cuatro mil, pagándole además todos sus gastos de viaje; segundo, copia del acta de requirimiento otorgada ante dicho Notario Palmer por Don José Portela Silva y hecho a "Porto Rican American Tobacco Company" para que reconociera la carta de 8 de Octubre de 1900 que á la letra dice: "Sr. Don José Portela.—San Juan.—En contestación á su atenta de hoy, le manifestamos que esta Compañía no debe á Ud. compensación alguna, por servicios desde Junio 1 de 1900 hasta Agosto 15 del mismo año, y se niega á pagar lo que no debe.—De Ud. attos. y S. S., Porto Rican American Tobacco Company, W. T. Tawnes, Presidente", la que fué reconocida, rehusando contestar al interrogatorio que Portela le siguió haciendo.

*Resultando:* que fundado en dichos documentos y acompañando certificación de conciliación sin avenencia, Don José Portela Silva formuló demanda contra Porto Rican American Tobacco Company, sentando como hechos: la expresada venta de todos sus derechos y acciones y precios; la cláusula expresada que contiene dicha escritura referente al empleo de los socios, desde el 16 de Agosto de 1899 y dedicar tres cuartas partes de su tiempo, habilidad y conocimientos por el sueldo en el anterior "Resultando" mencionado; que Portela cumplió con esa cláusula no correspondiéndole Porto Rican American Tobacco Company, con el abono del sueldo, dejándole de abonar ochocientos treinta y tres dollars treinta y dos centavos de los meses de Junio, Julio y quince dias de Agosto de 1900, á razón de cuatro mil dollars al año: que Portela escribió carta al Director de la Compañía reclamando sus sueldos y le contestó en 8 de Octubre de 1900 que nada se le adeudaba y la Compañía se negaba á pagar lo que no debía, ratificando esa manifestación según el acta notarial ya relacionada en Resultando anterior, siendo los fundamentos legales; los artículos 1089, 1091, 1101, 1108, 1542 y 1544 del Código Civil, y los 50 y 63 del de Comercio y el 63 de la Orden General número 118 de 1899, y pidiendo se condene al demandado á pagarle los ochocientos treinta y tres dollars treinta y dos centavos é intereses legales desde que debió ser satisfecha esa suma hasta el pago y las costas.

*Resultando:* que el demandado contestó se declare carece el actor de derecho y de acción, se le absuelva de la demanda y se condene en costas á Portela, sentando como hechos: que en New York se otorgó el contrato que contiene el acta inicial de estos autos en 9 de Octubre de 1899: que lo ven-

the traveling expenses. Second.—A copy of the instrument executed before said Notary Palmer by José Portela Silva calling upon the "Porto Rican-American Tobacco Company", to identify the letter dated October 8, 1900, which literally reads: Mr. José Portela, San Juan. In reply to your favor of even date we have to state that this company owes you no compensation whatever for services from June 1, 1900, to August 15 of the same year, and refuses to pay what it does not owe. Yours respectfully, "Porto Rican-American Company", W. T. Tawnes, President, which letter was identified, the company refusing to reply to the interrogatory propounded by Portela.

Based upon these documents and accompanying a certificate of the proceedings to secure a conciliation which had resulted in no agreement, José Portela Silva filed a complaint against the "Porto Rican-American Tobacco Company", alleging as facts: The aforesaid sale of all his rights and actions and property; the clause mentioned above contained in said deed, referring to the employment of the partners from August 16, 1899, who were to devote three-fourths of their time, ability and knowledge to the business for the salary mentioned in the above finding of fact; that Portela had complied with this clause, while the "Porto Rican-American Tobacco Company" had failed to do so as to payment of salary, said company having failed to pay him eight hundred and thirty-three dollars and thirty-two cents for the months of June, July, and fifteen days of August, 1900, at the rate of four thousand dollars per annum; that Portela had written a letter to the manager of the company claiming his salary, the latter replying on October 8, 1900, that it did not owe him anything, and stating that the company refused to pay what it did not owe, which statement was ratified in the notarial act mentioned in the foregoing finding. As legal authority he cited, articles 1089, 1091, 1101, 1108, 1542 and 1544 of the Civil Code, and articles 50 and 63 of the Code of Commerce and section 63 of General Order No. 118, series of 1899, and prayed that judgment be entered against defendant for eight hundred and thirty-three dollars and thirty-two cents with legal interest from the date said sum should have been paid, and costs.

In answering the complaint the defendant prayed that plaintiff be declared to have no cause of action, and that the complaint be dismissed, with costs against Portela. The facts alleged by the defendant were: That the contract giving rise to these proceedings was executed in New York on October 9, 1899; that the sale included the use of machinery for the manufacture of cigars, processes, secrets and other particulars, the Company deeming it advisable that Rucabado and Portela should render their services for one year from August 16, 1899; that this is the reason why the clause mentioned in the above findings of fact figured as an important factor with reference to this service and to salary, duration and proportion of time to be devoted to said service; that by another clause the vendors were to

dido comprendía el uso de máquinas para la elaboración de tabacos, prácticas, secretos y otros particulares, creyendo la Compañía conveniente que que Rucabado y Portela prestaran servicios durante un año, desde el 16 de Agosto de 1899: que por ello figura como factor importante del contrato la cláusula mencionada en los Resultandos anteriores respecto á ese servicio, sueldo, tiempo que debía durar y el que debían dedicar al mismo; que otra cláusula es comunicar todas las fórmulas, procedimientos, recetas, etc., según el primer Resultando expresa: que privadamente se convino que Rucabado y Portela manifestasen tenían el derecho de comprar las máquinas á Bensach Machine Company, al precio de cinco mil dollars cada una, según convenio verbal con Mr. Noell agente de ellas y traspasaban á la Compañía ese derecho, estando dispuestos en cualquier tiempo á practicar las diligencias necesarias á ello : que Portela pretendió en el requerimiento un interrogatorio, como si fuera Juez : que Don José Portela permaneció al servicio de la Compañía hasta el 18 de Mayo de 1900, que recibió instrucciones para ir á Ponce á cobrar un crédito, fué, no dió conocimiento de su llegada ni del estado de la comisión que recibió, regresando á esta Capital sin presentarse en las oficinas de la Compañía y ausentándose para los Estados Unidos donde permaneció hasta Septiembre de 1900, sin autorización de la Compañía : que por negligencia de Portela sufrió la Compañía ochocientos dollars de perdida; que Mr. Townes, hácia el 20 de Mayo de 1900, hizo esfuerzos para verse con Portela, para obtener detalles del asunto de Ponce, siendo inútiles sus esfuerzos : que en New York lo encoutró por casualidad, le recordó lo convenido sobre la compra de máquinas y ofreció cumplirlo, acompañándole á tratar el traspaso de las máquinas con Noell, empleando dos noches y un dia : que la Compañía ha pedido á Portela la cuenta de ese servicio, aunque nada le debía, y se ha excusado : que el actor abandonó su empleo, pues sin autorización ni conocimiento se fué para New York á asuntos propios: que Rucabado se vió impedido de cumplir sus deberes por enfermedad y la Compañía le hizo gracia abonándole por completo todos sus sueldos; siendo el derecho los artículos 1091, 1100, 1101, 1157, 1254, 1256, 1261, 1278, 1281, 1544 y 1583 del Código Civil y el 63 de la Orden General número 118 de 1899.

*Resultando:* que abierto á prueba de las del actor resulta: la confesión del Presidente de la Compañía demandada de conocer á Don Fausto Rucabado y á Don José Portela Silva, que tenían en esta ciudad una Fábrica de cigarrillos y tabacos la que vendieron en 9 de Octubre de 1899, retrotrayendo la venta á 16 de Agosto anterior á la Porto Rican American Tobacco Company : que la venta fué por acciones emitidas y entregadas á Portela y Rucabado, siendo cierta la cláusula del contrato referente al empleo de esos señores al servicio de la Porto Rican American Tobacco Company, por un año, desde el 16 de Agosto de 1899, por cuatro mil dollars càda uno por año

communicate all the formulas, processes, recipes, etc., as stated in the first finding of fact; that privately it was agreed that Rucabado and Portela should transfer to the Company their right to purchase the machines from the Bensach Machine Company, at the price of five thousand dollars each, according to a verbal agreement with the latter's agent, Noell, said Rucabado and Portela being at any time ready to take the necessary steps for the purpose of attaining this object; that Portela, in the requisition, had attempted to propound questions, as if he were a judge; that José Portela had remained in the service of the Company until May 18, 1900, when, having been instructed to repair to Ponce for the purpose of collecting a debt, he did go, but failed to report his arrival and the result of the commission entrusted to him; returning to this city, he did not make his appearance at the office of the Company, and departed for the United States where he remained until September, 1900, without permission of the Company; that through Portela's negligence the Company had suffered a loss of eight hundred dollars; that Townes, on or about May 20, 1900, had tried to see Portela for the purpose of obtaining particulars with reference to the Ponce matter, but all his efforts proved unavailing; that in New York he met him by chance and reminded him of the agreement about the purchase of the machines, which he promised to carry out, and went with him to see Noell about the transfer of said machines, employing in this trip two nights and one day, that the Company had requested Portela to present his bill for this service, although it owed him nothing, but he omitted to do so; that the plaintiff had abandoned his employment and without the knowledge and consent of the Company had gone to New York to attend to private matters of his own; that Rucabado had through illness been prevented from performing his duties and the Company, as a favor, had allowed him all his salary. As legal authority the defendant cited articles 1091, 1100, 1101, 1157, 1254, 1256, 1261, 1278, 1281, 1544 and 1583 of the Civil Code and section 63 of General Order No. 118, series of 1899.

At the proceedings for the taking of evidence, that submitted by the plaintiff was: First.—The admission of the president of the defendant Company to the effect that he knew Fausto Rucabado and José Portela Silva, who had in this City a cigarette and cigar factory which they had sold to the "Porto Rican-American Tobacco Company", on October 9, 1899, the sale to date back from the 16th of August last; that the sale was effected by means of shares issued and delivered to Portela and Rucabado, it being true that there was a clause in the contract referring to the employment of these gentlemen by the "Porto Rican-American Tobacco Company" for one year from August 16, 1899, at four thousand dollars per annum, each, payable by the month; that the Company had paid Portela up to the month of May 1900, which covered the period of his services, he at that date

pagado por mensualidades: que la Compañía pagó á Portela hasta el mes de Mayo que estuvo sirviendo, habiéndose ausentado en esa fecha, Mayo de 1900, de esta Isla, sin consentimiento, no abonándole la Compañía los meses de Junio, Julio y quince días de Agosto, porque durante ese período Portela no estuvo al servicio de ella; que la Compañía no lo ha requerido judicialmente, ni por Notario para dar por rescindido el contrato, ni particularmente; que Rucabado cobró el año entero porque estuvo al servicio de la Compañía todo el año, en cuyo tiempo estuvo dos meses enfermo, pero lo empleaban en firmar los checks como segundo Vice-Presidente de la Compañía; que encontrándose casualmente el Presidente con Portela en New York le invitó á hacer válida una de las partes de la contrata de venta en que aseguraban tenían el privilegio para comprar las máquinas que tenían arrendadas, á lo que accedió Portela mediante los gastos de viaje, gastos que no ha satisfecho la Compañía por negarse Portela á pasar la cuenta; *segundo:* constituido el Secretario del Juzgado Municipal en 11 de Noviembre de 1901 en el Establecimiento de la Porto Rican American Tobacco Company, requirió al Presidente Don Luis Toro á la presentación de los Libros Mayor y Diario y los puso de manifiesto, no haciéndolo con el de Cuentas Corrientes por expresar que solo hace referencia á las ventas y no á personal, y certifica el Secretario referido está encuadernado, forrado y foliado, teniendo el Diario la nota estampada por el Juez Municipal de San Francisco, con fecha 15 de Noviembre de 1899, las fojas selladas y de dichos libros aparece pagarse mensualmente los salarios de los empleados; *tercero:* declara el testigo Don Fausto Rucabado Vázquez sobre los particulares declarados pertinentes que la defensa estimó conveniente; *cuarto:* se dirigió exhorto por conducto del Attorney General á la autoridad judicial de New York, Estados Unidos, para el comparendo de Mr. Park, Abogado de la Porto Rican American Tobacco Company, para que se le interrogara sobre los particulares que el actor propuso y se declararon pertinentes, y contestó Mr. Junius Park: que es uno de los abogados de la Compañía y su despacho está en las mismas oficinas número 3 de la Quinta Avenida: que en Agosto de 1900 Don José Portela y el testigo fueron á Lynchburg, Virginia, y á pesar de que Mr. W. T. Townes no los acompañó, los encontró allí; que fueron para obtener se admitiera la existencia de un contrato por el que se proveía el arriendo de máquinas de Bonsack á Rucabado y Portela, contrato aceptado por la Porto Rican American Tobacco Company al hacerse por condición verbal por la que tenían el derecho de comprar esas máquinas por precio estipulado; que ignora si al hacer el viaje Portela estaba empleado por la Porto Rican American Tobacco Company; pero entendió que en aquella época estaba empleado en el establecimiento ó fundación de una factoría para la manufactura de tabacos en Providencia, Rhode Island, y *quinto:* De Ford & Co. contestan no podían informar respecto á lo que se les preguntaba por estar balanceados y devueltos los libros.

having absented himself from the Island, without leave, and the Company had refused to pay him for June, July and fifteen days of August, because during that time Portela was not in their service; that the Company had not called upon him judicially or before a notary to acknowledge the rescission of the contract, nor had it privately done so; that Rucabado had been paid for the whole year, during which time he had been ill for two months, but was employed in signing the checks as vice-president of the Company; that the president having casually met Portela in New York he had invited him to carry out one of the clauses of the contract of sale wherein it was stated that they had the option of buying the machines rented by them, to which Portela had acceded, the traveling expenses being for account of the Company, said expenses not having been paid because Portela had refused to render his bill.  Second.—The Clerk of the Municipal Court having repaired to the establishment of the "Porto Rican-American Tobacco Company", he requested the president, Luis Toro, to present the ledger and journal, which was done omitting the accounts-current book, because, as was stated, it had reference to accounts and not to personnel, the aforesaid clerk certifying that said book is bound, ruled and paged, and that the journal bears the note of the Municipal Judge of San Francisco, dated November 15, 1899, the leaves being stamped, and that from said book it appears that the salaries of employees were paid each month.  Third.—The witness Fausto Rucabado Vazquez testifies as to the matters declared pertinent, which the defendant had deemed proper.  Fourth.—Letters rogatory were addressed through the Attorney General to the judicial authorities of New York, United States, asking that Junius Park, attorney for the "Porto Rican-American Tobacco Company" be examined as to the matters proposed by the plaintiff that were declared pertinent; Junius Park's answer being, that he is one of the lawyers of the Company, having an office in the same building, No. 3 Fifth Avenue; that in August 1900, Portela and the witness went to Lynchburg, Virginia, and although W. T. Townes did not accompany them, the latter had met them there; that the object of their trip was to secure the acknowledgment of a contract providing for the lease of Bonsack's machines to Rucabado & Portela, a contract which had been accepted by the "Porto Rican-American Tobacco Company", with the right, as verbally agreed, to purchase said machines at a stipulated price; that he did not know whether or not at the time of making the trip, Portela was in the employ of the "Porto Rican-American Tobacco Company", but he understood that he was then engaged in establishing or founding a factory for the manufacture of cigars in Providence, Rhode Island.  Fifth.—De Ford & Co. replied that they were not in a position to furnish any information with respect to the matter upon which they were questioned because the books had been balanced and returned.

From the evidence introduced by the defendant it appears that José Por-

*Resultando* de las pruebas del demandado : que Don José Portela Silva confiesa se ausentó de Puerto Rico más ó menos el 27 de Mayo de 1900, estando ausente, hasta avanzado Septiembre, en los Estados Unidos; permaneciendo allí constantemente : que durante esos días no asistió al establecimiento, pero sí en New York á la Junta de Accionistas, y á un mandato del Presidente, al Estado de Virginia para la compra de unas máquinas ; que no le entregaron poder para ello, yendo con el Presidente ; que no hubo contrato verbal respecto á compra de máquinas entre la Sociedad y Portela y Rucabado y sí el ofrecimiento de si algún día necesitaban las máquinas las venderían al mismo precio, y estando en los Estados Unidos tuvo conferencia con Mr. Park y otros que anteriormente tuvieron otra conferencia respecto al día que irían ; que no hubo conferencia privada entre él y Mr. Park ; que fueron á ver á Mr. Noell y éste dijo que no se trataba de una sóla máquina sino de varias y él tenía compromiso con una Compañía fuerte y no lo anulaba ; que tardaron en el viaje dos noches y un día ; que estaba instalando una fábrica en Providencia cuando se le llamó ; que el declarante pagó el viaje de regreso y todo.

*Resultando :* que ante el Tribunal Supremo del Condado de New York declararon Mr. John B. Cobb ; que declara conocer las negociaciones de Rucabado y Portela respecto á la venta del establecimiento y dieron por resultado la Compañía de tabaco Porto Rican American ; que en esa época era primer Vice-Presidente de la última ; que al llegar Mr. Townes, Presidente, á New York, en el verano de 1900, estuvo ansioso de comprar ocho máquinas que la Compañía tenía arrendadas, y así arrendadas adquiridas de Rucabado y Portela ; que en una entrevista en la que Townes y Junius Parker estaban presentes en dicho verano de 1900, el último dijo á Townes que Mr. Noell, quien representaba la Compañía de máquinas Bonsack, negó hubiera tenido arreglo personal con Rucabado y Portela que permitiera á éstos la compra de las máquinas en arriendo, expresando Townes sorpresa al saber la negativa de Noell y estaba seguro que había sabido ésto por aquéllos y le consta que había sido con anterioridad declarado por Rucabado ó Portela que tal convenio verbal existía ; que en una reunión en New York, Portela y Mr. Park estaban presentes y el último dijo á aquél la negativa de Noell, y Portela expresó gran sorpresa al saberla, é indicó que no la haría á él personalmente si pudiera verle y recordarle el convenio verbal, por lo que le dijeron que debiera hacer la manera de verse personalmente con Noell, expresando buen deseo de verle conviniendo en un día en que sin detrimento para Portela pudiera ir á Lynchburg que estaba bajo la impresión de que Portela iba no como empleado de la Compañía sino como hombre que ha vendido como cierto un contrato y hacer buena la propiedad vendida; que pudo entender que sería una satisfacción para Portela corroborar el contrato verbal y que se sentía bajo una obligación para con la Compañía, y que la declaración

tela Silva admitted that he had left Porto Rico on or about the 27th of May, 1900, and was absent until late in September, being in the United States where he had remained continuously; that during the whole of that time he had not been at the store but was present at the meeting of the share-holders, in New York, and by order of the president had gone to the State of Virginia for the purpose of purchasing some machinery; that no power of attorney had been given him, as the president had accompanied him on the trip; that there had been no verbal contract about the purchase of machines between the Company and Portela & Rucabado, but only a promise that if at any time they needed the machines, these would be sold to them for the same price, and while in the United States he had conferred with Junius Park and others; that prior to that they had met to fix a day for the trip; that there had been no private interview between him and Park; that they went to see Noell who told them it was not a question of only one machine but of several, and he had a contract with a strong company which he would not cancel; that they had employed in the trip two nights and one day; that he was engaged in installing a factory when summoned; that the witness had defrayed the expenses of the return trip and all.

In the Supreme Court of the County of New York John B. Cobb testified that he had knowledge of the negotiations of Rucabado & Portela in regard to the sale of their establishment, which had resulted in the establishing of the " Porto Rican American Tobacco Company;" that at that time he was vice-president of the latter; that when Mr. Townes, the president, arrived in New York in the summer of 1900, he was anxious to buy eight machines that the Company had on lease, they having been acquired under said lease from Rucabado & Portela; that at an interview in which Townes and Junius Park were present, in the summer of 1900, the latter had told Townes that Noell, who represented the Bonsack Machine Company, had denied that he had made any personal arrangement with Rucabado & Portela which permitted the latter to purchase the rented machines, and Townes had expressed surprise in hearing of Noell's denial as he was sure that he had been informed of this arrangement by the former and he knew that Rucabado or Portela had previously declared that such a verbal agreement existed: that at a meeting in New York, Portela and Park being present, the latter told the former about Noell's denial, at which Portela showed considerable surprise and said that Noell would not make such a denial personally to him if he could see him and remind him of the verbal agreement; thereupon Portela was told that he should endeavor to have a personal interview with Noell, which he expressed a desire to do, and it was agreed that a day would be chosen when Portela might go to Lynchburg without any inconvenience; that he was under the impression that Portela was to go not as an employee of the Company, but as a person who had sold a contract as a thing certain,

de 10 de Mayo de 1900 expresa la verdad del asunto; y Mr. Junius Park: que al valorar la propiedad se consideró un contrato por el cual Rucabado y Portela tenía el exclusivo derecho de usar las máquinas Bonsack en Puerto Rico, máquina considerada la mejor y por esto la consideraron de un gran valor y uno de los atractivos para la Compañía; por dicho contrato se proveía que por cada máquina alquilada pagarían cien dollars al mes y como dijeron que ésto tenía un contrato verbal para obtener la propiedad por cinco mil dollars, es consiguiente hacía de mucho valor el contrato; que recibió instrucciones para comprar las ocho máquinas y para una entrevista con Noell para un arreglo; tuvo la entrevista y Noell negó el convenio verbal, continuando así las cosas hasta Agosto de 1900 en que Mr. Townes estuvo en New York y avistándose con Portela le dijo la negativa de Noell y contestó no creía se negara en su presencia, agregando á Portela que Townes y demás de la Compañía estimaban de valor la compra de las máquinas, y como había vendido con ese contrato verbal debía ir á Lynchburg é inducir á Noell á cumplirlo, conviniendo en ello Portela, señaló fecha, saliendo el 7 de Agosto y viéndose con Noell sostuvo la negativa, Portela declaró existir el convenio verbal y Noell sostuvo lo contrario y se negó á admitirlo; que él no obraba como empleado ni representante de la Compañía; que nada sabe de si Portela dejó de prestar servicios á la Porto Rican American Tobacco Co. y nunca se le ocurrió que Portela hiciera otra cosa que un deber y reconoce la firma de la declaración jurada ante Notario, copia de la que se le exhibe y es verdadera, agregando que Portela y el testigo salieron el 7 por la tarde y volvieron á las 7 de la mañana del 9 de Agosto de 1900: conteniendo la declaración jurada ante Notario de este testigo y de Cobb que expresa lo por ellos expuesto en sus declaraciones con determinados detalles. Siendo Ponente el Sr. Juez Asociado Don Juan J. Perea.

*Considerando:* que es condición natural del contrato de servicios la de su prestación para tener derecho al estipendio y el que no los presta puede despedirse ó ser despedido antes del cumplimiento, siendo sólo la indemnización el derecho que tiene el que presta los servicios, si lo fuere sin justa causa.

*Considerando:* que de la prueba consta acreditado que Portela Silva no prestó los servicios durante los meses de Junio, Julio y quince días de Agosto que reclama, ausentándose sin consentimiento ni autorización de la Compañía para los Estados Unidos, en donde estuvo durante ese tiempo y de donde regresó en Septiembre; y esa falta de cumplimiento, por su parte, no precisa al demandado á pedir la rescisión ni la nulidad del contrato como en el acto de la vista pretendía el actor.

*Considerando:* que solicitado por Portela el cumplimiento del contrato habiendo faltado á él por su parte, esa falta no consiente pueda compelirse al demandado á cumplirlo y menos que éste tenga necesidad de pedir rescisión ó nulidad préviamente, porque aquélla presume la existencia de un vicio de

and desired to make good the property sold; that he could understand that it would be a satisfaction for Portela to corroborate the verbal contract and that he, Portela, felt he was under an obligation to the Company; that the declaration of May 10, 1900, expressed the truth in the matter.    Junius Park testified that in appraising the property, account was had of the contract whereby Rucabado & Portela had the exclusive right to use the Bonsack machines in Porto Rico, said machines being considered the best, for which reason great value was attached to them, they being considered quite an inducement by the Company; by said contract it was provided that one hundred dollars per month would be paid for each machine rented, and as they said they had a verbal contract to secure the ownership for five thousand dollars, this made the contract very valuable; that he had received instructions to buy the eight machines, and to hold an interview with Noell for the purpose of effecting an arrangement; the interview was held when Noell denied that there was any verbal agreement.    Thus matters stood until August 1900, when Townes came to New York and upon meeting Portela he told him about Noell's denial, Portela remarking that he did not believe Noell would mantain the denial in his presence.    Portela was told, moreover, that Townes and the other members of the Company considered the purchase of the machines of great importance and as he had sold with this verbal contract, he should go to Lynchburg and prevail upon Noell to make it good; this Portela agreed to do fixing a day for the trip which took place on August 7; he saw Noell who maintained his denial, Portela declaring that the verbal agreement existed while Noell maintained that it did not and refused to admit it; that he (the witness) did not act as an employee or representative of the Company; that he knew nothing as to Portela's leaving the service of the "Porto Rican-American Tobacco Company", and it had never occurred to him that Portela was doing anything but what he considered to be his duty; that he acknowledged the signature affixed to the affidavit taken before a notary, copy whereof is exhibited and declared by him to be true, adding that Portela and the witness had left on the 7th in the evening, and had arrived at 7 o'clock a. m., August 9, 1900. The affidavit of this witness and that of Cobb taken before a notary contain the facts set forth in their testimony with certain details.    Judge Juan J. Perea prepared the opinion of the court,

"It is a natural condition of a contract for services that the same must be rendered in order to have a right to compensation therefor, and the party who fails to render them may be dismissed before the fulfillment of the contract, the party who rendered the services being entitled to indemnification only in case he should be dismissed without just cause.

From the evidence introduced it appears that Portela failed to render the services due by him, during the months of June, July and fifteen days of August, payment for which he claims, having absented himself without the

nulidad en la contratación, y la nulidad defectos que lo invalidan, lo que no ocurre en el presente caso como así se desprende y deduce del contenido de los artículos 1583 á 1587 y 1595 del Código Civil.

*Considerando:* que dado lo expuesto en el primer y segundo Considerando, no constando la autorización ni el consentimiento de la Compañía para la *ausencia* en los Estados Unidos de Don José Portela Silva, quien por esa causa no prestó á la Compañía, durante ese período de tiempo, los servicios que se obligó á prestarle, no pudiendo deducirse de autos dicho asentimiento y autorización, pues si la Compañía los hubiera concedido, no sólo reclamaría el sueldo, si que todos los gastos de viaje de ida y regreso y el mayor sueldo como de la contrata y traspaso que el primer Resultando refiere, expresa, si la Compañía hubiera exigido á Portela ó Rucabado residiera en Santo Domingo por el interés de la Compañía.

*Considerando:* que estas apreciaciones no se desvirtúan por el hecho de haber ido Portela á Virginia para tratar de la compra de máquinas, porque aparte de que esta gestión la hizo por los motivos que de autos resultan, no puede admitirse que para ese solo objeto fuese enviado por la Compañía á los Estados Unidos y permaneciera allí dos meses y medio cuando en el viaje á Virginia se emplearon solamente un día y dos noches, mucho más al confesar él mismo se hallaba en Providencia, R. I., instalando una fábrica de tabacos, cuya afirmación corrobora que no había ido allí por cuenta de la Compañía demandada sino para la gestión de sus propios asuntos.

*Considerando:* que no constando ni pidiéndose el cumplimiento de la cláusula de residencia fuera de la Isla y los gastos de viaje, ni acreditado el servicio, ni que el pago no se ha efectuado sin justa causa como el Código prefija, la demanda debe declararse sin lugar con las costas al actor.

*Fallamos:* que debemos declarar y declaramos sin lugar la demanda, y en su virtud absolvemos de ella á la Porto Rican American Tobacco Company, con las costas á Don José Portela Silva. Así por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos:—Juan Morera Martínez.—Henry F. Hord.—Juan J. Perea."

*Resultando:* que contra esa sentencia interpuso la representación de Don José Portela Silva recurso de casación por infracción de Ley, que le fué admitido, y elevados los autos á esta Corte Suprema, previo emplazamiento de las partes, cuando ya se había tramitado el recurso como de casación, se acomodó la sustançiación del mismo á la Ley de la Asamblea Legislativa aprobada en 12 de Marzo último sobre conversión de esta Corte Suprema en Corte de Apelación, habiendo evacuado ambas partes el traslado que para instruc-

consent or authorization of the Company, and had departed for the United States where he remained during that time, returning in September, which failure on his part to comply with the contract relieves. defendant from asking for the rescission and nullity thereof, as requested at the hearing by the plaintiff.

Portela demanded the fulfillment of the contract, but as he had himself failed to comply with it, by reason of this failure on his part, defendant cannot be compelled to comply with it, and much less can he be required to ask for the rescission or nullity thereof, because the former would imply a defect of nullity in the contract, and the latter such defects as would invalidate the same, which is not the case in the present instance, as is seen from a reading of the provisions contained in articles 1583 to 1587 and 1595 of the Civil Code.

In view of the facts set forth in the first and second conclusions of law it not appearing that the Company's consent and authorization were given to Portela, for his absence in the United States, and who therefore did not render during that period of time the services which he was bound by the contract to render, nothing appearing in the record from which such consent and authorization can be implied, inasmuch as if the Company had given its consent and authorization, he would have claimed, not only the salary agreed upon, but also all his traveling expenses for the round trip, and the larger salary assigned by contract in the event of either Portela or Rucabado being required to reside in Santo Domingo in the interests of the Company.

These considerations are not destroyed by the fact that Portela went to Virginia to negotiate about the purchase of machinery for the Company, because, aside from his doing so for the reasons set forth at the hearing, it cannot be admitted that he had been sent to the United States by the Company for this sole purpose, remaining there two and a half months, when in the trip to Virginia only one day and two nights were employed, especially when he himself admits that he was in Providence, Rhode Island, engaged in installing a tobacco factory, a statement which goes to show that he had not undertaken the trip for account of the Company but for the purpose of attending to private affairs of his own.

Inasmuch as compliance with the clause referring to residence abroad had not been called for by the Company, nor has a demand for travelling expenses been made by Portela, nor has it been shown that the services were rendered and payment therefor had been refused without just cause, as provided by the Civil Code, the complaint should be dismissed with costs against plaintiff.

We adjudge that we should declare, and do declare, that the aforesaid complaint cannot be sustained, and enter judgment in favor of the "Porto Rican American Tobacco Company", costs being taxed against José Portela Silva.

ción les fué concedido, y señalándose día para la vista, que tuvo lugar el día 4 del actual, en cuyo acto informaron los Letrados de las partes apelante y apelada, cuanto estimaron conducente á la defensa de sus respectivas pretensiones.

Abogado del apelante : *Sr. Texidor.*

Abogado del apelado : *Sr. Cuevillas.*

Thus by this our judgment we finally adjudge, command and sign.—Juan Morera Martinez.—Henry F. Hord.—Juan J. Perea ".

From this decision counsel for José Portela Silva took an appeal in cassation for error of law, which was allowed. The record being forwarded to this Supreme Court, after citation of the parties the appeal was taken under consideration as an appeal in cassation, but afterwards made to conform to the procedure provided by "An Act of the Legislative Assembly, establishing the Supreme Court of Porto Rico as a court of appeals", approved March 12, 1903. The papers were submitted to both parties for their information and a day set for the hearing. The hearing was held on the fourth of the present month when counsel for appellant and respondent made such arguments as were by them deemed advisable in support of their respective claims.

*Mr. Texidor*, for appellant.

*Mr. Cuevillas*, for respondent.

MR. JUSTICE HERNÁNDEZ, after making the above statement of facts, delivered the following opinion of the court:

All the findings of fact and conclusions of law hereinbefore set forth are substantially accepted.

Costs should be taxed against the party who loses his case on all points, according to section 63 of General Order No. 118, of August 15, 1899.

We adjudge that we should affirm, and do affirm, the judgment appealed from, rendered by the District Court of San Juan on August 28, 1902, with costs of the proceedings on appeal taxed against the appellant, José Portela Silva.

Chief Justice Quiñones, and Justices Figueras and Mac-Leary concurred.

Mr. Justice Sulzbacher did not sit at the hearing of this case.